JUDGE BUCHWALD

James H. Power
Marie E. Larsen
HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, New York 10019
Telephone: (212) 513-3200
Fascimile: (212) 385-9010
Email: james.power@hklaw.com
         marie.larsen@hklaw.com

*Attorneys for Plaintiff*
*Tatiana Akhmedova*

**19CV7966**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TATIANA AKHMEDOVA,<br><br>               Plaintiff,<br><br>-against-<br><br>FARKHAD AKHMEDOV, and STRAIGHT ESTABLISHMENT,<br><br>               Defendants. | Civil Action No.<br><br>**VERIFIED COMPLAINT** |

Plaintiff Tatiana Akhmedova ("Ms. Akhmedova" or "Plaintiff") submits this Verified Complaint against Farkhad Akhmedov and Straight Establishment ("Farkhad" and "Straight", collectively "Defendants"), and alleges as follows:

## THE PARTIES, JURISDICTION, AND VENUE

1.    This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and falls under this Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333.

2.      This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1333 because this action arises out of one or more maritime torts by Defendants against Plaintiff, specifically, the conversion, trespass and private nuisance with respect to the meg yacht M/Y LUNA (the "Vessel").

3.      This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over any tortious causes of action plead by Plaintiff which the Court may later determine are not maritime in nature.

4.      Plaintiff brings this action to obtain security for a maritime claim pursuant to Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Rule B"), seeking an order and writ of attachment over property of Defendants including but not limited to funds of Defendants which are beneficially maintained by their paying agent(s) at garnishee financial institutions within the District.

5.      At all times relevant hereto, Ms. Akhmedova is and was a resident of England and a British citizen.  Plaintiff resides at Somerton House, St George's Hill, Weybridge, Surrey KT13 0NR.

6.      Upon information and belief, at all times relevant hereto, defendant Farkhad Akhmedov is domiciled in and is a resident of Azerbaijan.  Farkhad's last known address was 17 Mirza Shafi Street, Old City, Baku, Azerbaijan, AZ1 095.  Farkhad lived in England as a non-resident for much of his marriage to Ms. Akhmedova, and worked as an oil and gas trader.  He had significant financial success in the Russian gas industry, and he sold his interest in ZAO Northgas, a Russian oil company, for $1.375 billion in 2012.  Ms. Akhmedova and Farkhad were married in 1993 in Moscow.  They moved to England shortly thereafter and raised their two children in

England.  They were married for 22 years until Ms. Akhmedova filed for divorce on October 24, 2013.

7.    Farkhad is subject to the specific personal jurisdiction of this Court based on his use of garnishee Y. CO NY INC as a paying agent within this District, but is not found within the District nor can he be personally served with process within the District.  .

8.    At all times relevant hereto, Straight Establishment is a Liechtenstein Anstalt and was established on February 17, 2017 under the register number FL-0002.541.523-0.  Straight Establishment is a foreign maritime entity registered in the Marshall Islands on April 26, 2017 and is the registered owner of the Vessel.

9.    Straight is subject to the specific personal jurisdiction of this Court based on its use of garnishee Y. CO NY as paying agent within this District but is not found within the District and cannot be served with process within the District, and as the alter ego of Farkhad who is also subject to personal jurisdiction.

10.    At all times relevant hereto, garnishee YCO NY INC ("Y.CO. NY") is a corporation organized and existing under the laws of New York with a registered agent for service of process in the State of New York.  Upon information and belief, YCO NY INC maintains a bank account within this District at Bank of America, 222 Broadway, New York, NY 10038 which it uses to act as paying agent to make payments necessary for maintenance and operation of the Vessel which is owned by Straight Establishment for the ultimate benefit of Farkhad.  Upon information and belief, all of the funds held in the Y.CO. NY account are the funds of Farkhad and its alter ego, Straight Establishment.

11.    At all times relevant hereto, garnishee Bank of America is in possession of the Y.CO. NY account within this District.

3

## FACTUAL BACKGROUND

12.     This action arises out of Plaintiff's divorce from her former husband, defendant Farkhad.  This divorce has been highly publicized as "Britain's Most Expensive Divorce" because it concerns approximately one billion dollars of assets, including one of the largest and most expensive yachts in the world, the M/Y LUNA.

13.     Plaintiff issued a divorce petition in London on October 24, 2013.  Ms. Akhmedova was granted a *decree nisi*, stating that the English Court saw no reason why the couple could not divorce, on December 2, 2015.  The *decree nisi* was made absolute on December 15, 2016.

14.     Following the divorce, an eight-day Financial Remedy Hearing was heard in the Family Division of the English High Court (the "English Court") in November and December 2016.  The purpose of the Financial Remedy Hearing was to establish the value of the couple's assets and to decide how to divide that value in a final distribution.  However, during the divorce proceeding and leading up to the Financial Remedy Hearing, Farkhad took significant steps to create a web of companies to transfer and receive hundreds of millions of dollars of estate property.

15.     On November 30, 2016 (the second day of the Financial Remedy Hearing) the LUNA, a luxury yacht beneficially owned by Farkhad via corporate shell, was transferred from its corporate owner, Avenger Assets, to another entity, Stern Management Corporation at the instruction of Farkhad.  One day later, on December 1, 2016, the Vessel was again transferred at the instruction of Farkhad from Stern Management Corporation to another entity, Qubo 2 Establishment.

16.     At the conclusion of the Financial Remedy Hearing on December 15, 2016, the English Court awarded Ms. Akhmedova an Initial Money Judgment constituting a cash award of

GBP £350,000,000 (approximately US $466.6 million).  Farkhad was ordered by the English Court to pay the cash award by January 6, 2017.

17.     On December 20, 2016 the English Court also found that transfers of a 1) modern art collection worth tens of millions of dollars and 2) the assets of Cotor,[1] to entities in Liechtenstein, including Qubo 1 and Qubo 2 "was simply the latest part of [Farkhad's] attempts to avoid his liabilities by purporting to transfer his assets to a new jurisdiction and thereby making enforcement more difficult."  The English Court set aside these transfers on the basis that Qubo 1 and Qubo 2 "are no more than ciphers and the alter ego of [Farkhad]" and made the Qubo entities liable for the judgment debt together with Farkhad.

18.     On December 20, 2016 the English Court also issued a Freezing Order preventing Farkhad and the other judgment debtors from dealing with his assets (whether in or outside England and Wales), and ordering him to make financial disclosure of his assets.

19.     Farkhad has not voluntarily satisfied any portion of the Cash Award, including the Initial Money Judgment, and is currently in contempt of Court for breaching the terms of the Freezing Order.  He has instead continued to engage in a pattern of deception aimed at concealing his assets and frustrating Ms. Akhmedova in her efforts to enforce her rights as a UK judgment creditor.

20.     On March 8, 2017 (while the Vessel and Farkhad were located within the United States, specifically, Florida), in disregard of the Initial Money Judgment (under which Qubo 2 was liable on the judgment debt together with Farkhad), and the English Freezing Order, Qubo 2 fraudulently transferred the Vessel to Straight Establishment.

---

[1] In 2012, Farkhad sold his interest in ZAO Northgas, a Russian oil company, for US $1.375 billion.  Following the sale, Farkhad the English Court found that he then transferred the bulk of the sale proceeds to Cotor.

21.     Between February and May 2017, at the same time of the transfer from Qubo 2 to Straight Establishment, local news reports in South Florida reported that the Vessel was docked in Miami, Florida.  Additionally, Farkhad posted to social media on March 6, 2017 a photograph of himself and his son at Mar-a-Lago in Palm Beach, Florida.  Upon information and belief, Farkhad and his family were living full-time onboard the Vessel from December 2016 through March 2017.

22.     According to documents obtained from the RMI Registrar of Corporations, the fraudulent transfer of the Vessel's title to Straight Establishment in violation of the Freezing Order was effected on behalf of Farkhad by key officers and directors at Y. CO., the Vessel's current manager.

23.     On March 21, 2018, the English Court issued a second judgment, (the "Straight Judgment"), which extended the Initial Money Judgment to include Straight Establishment and Avenger Assets. The English Court found that Straight Establishment was an alter ego of Farkhad and served as his nominee.  The English Court found that assets held and previously held in Straight Establishment's name, as well as assets held and previously held in Avenger Asset's name, beneficially belonged to Farkhad, including the Vessel which had been fraudulently transferred by Farkhad several times during the English proceedings.   A true and correct copy of the March 21, 2018 Judgment is attached hereto as Exhibit 1.

24.     The English Court declared "with immediate effect that Applicant is the legal and beneficial owner of the Vessel," and ordered Farkhad and Straight Establishment to transfer title to Ms. Akhmedova within seven days. Ex. 1 at ¶ 9. The English Court ordered that if the title transfer was not effected within seven days, Straight Establishment would be liable to Ms. Akhmedova for a liquidated cash sum of $487,278,000. *Id.* at ¶ 10.  The English Court also extended the Freezing Order to apply to Straight Establishment and Avenger Assets, and

specifically applied to prohibit the "removal, disposal, charging and/or diminution in value" of the Vessel.

25.     On April 19, 2018 the English Court issued an opinion and order which, in addition to granting further relief to Applicant as a result of Straight's failure to transfer title to Ms. Akhmedova as ordered, recites the basis for the Court's March 21, 2018 Straight Judgment.  Justice Haddon-Cave sets forth in detail his reasoning for finding Straight and Avenger to be alter egos of Farkhad including his assessment of the evidence presented.

26.     Since March 21, 2018 Farkhad and Straight have failed to transfer ownership or turnover possession of the Vessel to Plaintiff and continue to evade Plaintiff's attempted execution of the judgments against them.

27.     News articles following the entry of the Money Judgments have reported on Farkhad's defiance of the orders entered against him.  Farkad has reportedly stated on the record that the Order is "worth no more than toilet paper" and merely represents an "abuse of the English legal system" by Petitioner.  One article reports Farkhad's comments that "the prospects for this judicial decision are the same as a donut hole" since he has no assets left in the jurisdiction (i.e., the United Kingdom).

28.     In a June 2018 article in the New York Times, Farkhad's spokesperson stated that Farkhad "would rather see the Luna rot in the Dubai heat than see it handed over to [Ms. Akhmedova]."  These statements by Farkhad and his spokespersons demonstrate his utter disregard of the law and willingness to allow or intentionally cause a reduction in value of the Vessel, despite its ownership having been transferred to Plaintiff by the English Court.

29.     In July 2018 Plaintiff filed two actions in the Republic of the Marshall Islands ("RMI") seeking to recognize the foreign judgments and to obtain transfer of title in the vessel

registry maintained by the RMI Maritime Administrator.   In connection with those actions, Plaintiff obtained a temporary restraining order, followed by a preliminary injunction, preventing Straight Establish or its agents or representatives from "disposing of, selling, transferring, encumbering, removing, paying over, conveying or otherwise interfering with the vessel M/Y LUNA... wherever located, during the pendency of this action."

30.     Despite the issuance of the RMI preliminary injunction, Farkhad and Straight have taken continual measures to violate the injunction, in an attempt to move the Vessel from where it is currently located in Port Rashid, Dubai, in order to further interfere with Plaintiff's rightful ownership, possession, use and enjoyment of the Vessel.  These efforts include, but are not limited to entering into contracts to tow the Vessel from its location into international waters, and at least one attempt to re-register the Vessel to the registry of Sierra Leone in order to evade the jurisdiction of the RMI Court.

31.     During discovery ordered by the RMI Court, Plaintiff obtained documents from the Trust Company of the Marshall Islands (who acts on behalf of the Maritime Administrator) which showed payment of certain fees related to the Vessel by an entity called "YCO NY INC."  A true and correct copy of one such document is attached hereto as Exhibit 2.  The Wire Transfer Detail Report shows that the fee was paid from Y.CO NY's account at Bank of America located at 222 Broadway, New York, NY.  The reference for the wire refers specifically to the Vessel LUNA.

32.     Upon information and belief, garnishee Y.CO. NY maintains the Bank of America account with Defendants' funds in order to make payments related to the maintenance and operation of the Vessel, as discussed in more detail below.  The Vessel requires substantial sums to maintain and operate, and since Y. CO NY is clearly making payments for the Vessel on behalf

of Farkhad it is very likely that significant sums of monies are held in the referenced New York located account.

## FIRST CAUSE OF ACTION:  MARITIME TORT - CONVERSION

33.     Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

34.     The English High Court, after a full and fair trial on the merits found that Straight Establishment is an alter ego of Farkhad and Plaintiff was awarded title of the Vessel.   The Judgment is final and not subject to any appeal by Farkhad or Straight Establishment.

35.     Despite Plaintiff's exclusive ownership interest as issued by the English Court, Farkhad and Straight have appropriated Plaintiff's property, the Vessel, for their own use and gain.

36.     Specifically, Farkhad has utilized various alter ego entities, including Straight Establishment to evade enforcement of the English orders and judgments and have refused to recognize Plaintiff as the Vessel's owner and hand over possession of the Vessel.

37.     Defendant's wrongful exercise of dominion over the Vessel occurred while the Vessel was on navigable waters, therefore the tortious conversion is maritime in nature.  The harm to Plaintiff was felt on navigable waters and has a direct effect on maritime commerce.

38.     Plaintiff claims resulting damages from Defendants in the total amount of $487,278,000, the recognized value of the Vessel at the time its turnover was ordered by the English Court pursuant to Ms. Akhmedova's exclusive ownership interest.

## SECOND CAUSE OF ACTION: MARITIME TORT - TRESPASS TO CHATTELS

39.     Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

40.     In connection with the couple's divorce, Ms. Akhmedova holds a foreign judgment against Defendant Straight Establishment in which an English Court, after a trial on the merits, declared that Ms. Akhmedova was the legal and beneficial owner of the Vessel, and ordered

Straight Establishment (as registered owner) and Farkhad (as beneficial owner of Straight Establishment and the Vessel) to transfer title to Ms. Akhmedova within seven days.

41.    Accordingly, since March 21, 2018, Ms. Akhmedova had the sole right of ownership in the Vessel.

42.    Despite Ms. Akhmedova's right to own and possess the Vessel, Farkhad has dispossessed Ms. Akhmedova of her property, the Vessel, and has deprived her the ability to use and possession of the Vessel for more nearly one and a half years.

43.    Farkhad and Straight's failure to transfer title as ordered by the English Court, their continued possession of and presence onboard the Vessel constitute trespass.

44.    Upon information and belief, Farkhad and Straight have impaired the condition, quality and value of the Vessel.

45.    As the Vessel has at all material times been located on the water in Miami, Florida and elsewhere, the above harms were and continue to be felt on navigable waters and have a direct effect on maritime commerce.

46.    Plaintiff claims resulting damages from Defendants in the total amount of $487,278,000, the recognized value of the Vessel at the time its turnover was ordered by the English Court pursuant to Ms. Akhmedova's exclusive ownership interest.

### THIRD CAUSE OF ACTION: MARITIME TORT - PRIVATE NUISANCE

47.    Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

48.    Farkhad and Straight's substantial and unreasonable interference with Plaintiff's private property right – her ownership interest in the Vessel - constitutes private nuisance.

49.     Such actions, taken onboard and with respect to the Vessel have caused harm to Plaintiff which was and continue to be felt on navigable waters and have a direct effect on maritime commerce.

50.     Plaintiff claims resulting damages from Defendants in the total amount of $487,278,000, the recognized value of the Vessel at the time its turnover was ordered by the English Court pursuant to Ms. Akhmedova's exclusive ownership interest.

## APPLICATION FOR ISSUANCE OF RULE B ATTACHMENT

51.     Plaintiff seeks an order of attachment directing the seizure of Farkhad and Straight Establishment's assets in the district pursuant to Rule B of the Supplemental Rules for Certain Admiralty or Maritime Claims and Asset Forfeiture Proceedings of the Federal Rules of Civil Procedure ("Rule B") up to the amount of $487,278,000.

52.     Defendants Farkhad and Straight Establishment are not found within the Southern District of New York within the meaning of Rule B, but have assets, goods or chattels within the jurisdiction, to wit: funds maintained by Defendants' paying agent Y.CO. NY at Bank of America within this District.

53.     Upon information and belief, the Vessel, valued at over $400 million is an asset which requires substantial funds for basic maintenance and operation, estimated at approximately $1-2 million per month.

54.     Upon information and belief, management and operation of the Vessel is undertaken by an entity called Y.CO., a company which operates through various subsidiaries located in Monaco, London and the United States.

55.     Straight Establishment, despite being the registered owner of the Vessel, does not currently possess a bank account.  Instead, the substantial costs of maintaining and operating the Vessel are funded directly and indirectly by Farkhad who transfers funds to Y.CO.

56.     Specifically, garnishee Y.CO NY maintains the funds of Farkhad and Straight Establishment at Bank of America, and possibly other financial institutions in accounts located in New York, for the purposes of transferring to vendors who provide maintenance and other services to the Vessel.

57.     Further, garnishee Y.CO NY is subject to general jurisdiction in New York.

58.     Based on the foregoing, Plaintiff seeks the issuance of an order from this Court directing the Clerk of Court to issue a process of maritime attachment and garnishment against funds maintained by Y.CO NY at Bank of America for the benefit of and on behalf of defendants Farkhad and Straight Establishment pursuant to Rule B for the purpose of securing Plaintiff's claims as described herein.

## PRAYER FOR RELIEF

1.     That process in due form of law according to the practice of this Court in the form of a writ of maritime attachment and garnishment be issued against bank accounts and other property of Defendants with the garnishees Y CO NY INC and Bank of America, or any other garnishees upon whom the writ of maritime attachment and garnishment may be served;

2.     That Defendants Farkhad Akhmedov and Straight Establishment may be cited to appear in the matters aforesaid and that judgment be entered against them and in favor of Tatiana Akhmedova in the amount of $487,278,000.

3.    That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof; and,

4.    That this Court grant Plaintiff such other and further relief which it may deem just and proper.


Dated:  August 26, 2019

HOLLAND & KNIGHT LLP

By:    _____
James H. Power
Marie Larsen
31 West 52nd Street
New York, NY 10019
Phone: (212) 513-3200
Fax: (212) 385-9010
Email:  james.power@hklaw.com
        marie.larsen@hklaw.com

*Attorneys for Tatiana Akhmedova*

## **VERIFICATION**

STATE OF NEW YORK            )
                                                  :ss.:
COUNTY OF NEW YORK       )

   I, James H. Power, a Partner at Holland & Knight LLP, verify that I have read the foregoing

Verified Complaint and know the contents thereof, and the same are true and correct to the best of

my knowledge.   I make this declaration on behalf of, and with the authorization of, Tatiana

Akhmedova, who is a foreign citizen not located within this District.

   I verify under penalty of perjury that the foregoing is true and correct.


Dated: August 26, 2019                                     _____

                                                                      James H. Power


Sworn to before me on

26 August, 2019


_____
[Notary Public]

WALLIS BETH KARPF
Notary Public, State Of New York
No. 01KA6047092
Qualified In New York County
Commission Expires August 28, 2022